UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| MARILYN M. COOLLEY,<br><br>                    Plaintiff,<br><br>      vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>                    Defendant. | CIV. 15-5001-JLV<br><br><br>ORDER |

## INTRODUCTION

Plaintiff Marilyn Coolley filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability insurance benefits. (Docket 1).   Defendant denies plaintiff is entitled to benefits.   (Docket 9).   The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").   (Docket 11).   The parties filed their JSMF.   (Docket 12).   The parties also filed a joint statement of disputed material facts ("JSDMF").   (Docket 13).   For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 14) is denied and the Commissioner's motion to affirm (Docket 16) is granted.

## FACTUAL AND PROCEDURAL HISTORY

The Commissioner does not dispute the accuracy of the facts contained in the JSDMF, but only challenges the relevance of those facts.   (Docket 13 at p. 1). The parties' JSMF (Docket 12) and JSDMF (Docket 13) are incorporated by

reference.   Further recitation of salient facts is incorporated in the discussion section of this order.

On October 14, 2011, Ms. Coolley filed an application for disability insurance ("DI") benefits alleging an onset of disability date of July 22, 2011. (Docket 12 ¶ 1).   On November 1, 2013, the ALJ issued a decision finding Ms. Coolley was not disabled.   Id. ¶ 5; see also Administrative Record at pp. 20-29 (hereinafter "AR at p. ____").   On November 5, 2014, the Appeals Council denied Ms. Coolley's request for review and affirmed the ALJ's decision.   (Docket 12 ¶ 7).   The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.   It is from this decision which Ms. Coolley timely appeals.

The issue before the court is whether the ALJ's decision of November 1, 2013, that Ms. Coolley was not "under a disability, as defined by the Social Security Act, from July 22, 2011, through [November 1, 2013]" is supported by the substantial evidence in the record as a whole.   (AR at p. 28) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

**STANDARD OF REVIEW**

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g); Choate v.

2

Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.   The court reviews the Commissioner's decision to determine if an error of law was committed.   Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).   "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."   Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."   Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).   A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "   Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed de novo with deference given to the Commissioner's construction of the Social Security Act.   See Smith, 982 F.2d at 311.

3

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to disability benefits under Title II.   20 CFR § 404.1520(a).   If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.   Id.   The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).   The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.   (AR at pp. 20-21).

**STEP ONE**

At step one, the ALJ determined Ms. Coolley had not been engaged in substantial gainful activity since July 22, 2011, the alleged onset date.   Id. at p. 22; see also Docket 12 ¶ 207.

4

**STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."   20 CFR § 404.1520(a)(4)(ii).   "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe."   Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).   A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.   20 CFR § 404.1521.   An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   Kirby, 500 F.3d at 707.   "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."   Id. (citation omitted).   Additionally, the impairment must have lasted at least twelve months or be expected to result in death.   See 20 CFR § 404.1509.

The ALJ identified Ms. Coolley suffered from the following severe impairments: "obesity, sleep apnea, a rotator cuff tear of the right shoulder, and bilateral knee pain."   (Docket 12 ¶ 208).   Ms. Coolley objects to this finding and argues the ALJ should have included the following additional severe impairments: "bilateral foot pain," "the side-effects of diuretic medication," "the sedating effects of Vicodin and Tramadol," and "edema of both lower extremities." (Docket 15 at pp. 18 & 19).

Ms. Coolley argues the "failure to identify a severe impairment prevented the credibility finding, residual functional capacity ["RFC"] assessment, and

5

vocational opinion from being supported by substantial evidence." Id. at pp. 19-20 (referencing Pratt v. Sullivan, 956 F.2d 830, 836-37 (8th Cir. 1992). She also argues that "[t]he ALJ's failure to identify severe impairments, and their combined effects, negatively influenced the ALJ's assessment at step three." Id. at p. 20.

The Commissioner argues Ms. Coolley has not carried her burden of proof that the alleged additional impairments were severe.   (Docket 17 at pp. 11-17). The Commissioner asserts Ms. Coolley's feet condition was resolved by the use of custom orthotics.  Id. at p. 14.   Regarding the use of prescription diuretics, the Commissioner argues "[Ms.] Coolley fails to establish [any] extreme side effect . . . ."  Id. (referencing AR at pp. 22-23).   Although Ms. Coolley "alleged an extreme and unpleasant side effect . . . she never complained to or sought help from her health care providers during the relevant time."  Id. at p. 15.   The Commissioner opposes plaintiff's argument concerning any side effects of Vicodin and Tramadol because she advances this argument "[w]ithout any citation to medical evidence" and without ever "voic[ing] this complaint to her doctors."  Id. at p. 16 (referencing Johnston v. Apfel, 210 F.3d 870, 873 (8th Cir. 2000).   Finally, the Commissioner claims the ALJ addressed Ms. Coolley's "complaints of edema" because "she took medication to control edema . . . ."  Id.

"It is the claimant's burden to establish that [her] impairment or combination of impairments are severe."  Kirby, 500 F.3d at 707.   The regulations describe "severe impairment" in the negative.   "An impairment or

combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities. "Basic work activities" are defined to "mean the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b). The regulations explain those "abilities and aptitudes" involve:

    (1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

    (2)    Capacities for seeing, hearing, and speaking;

    (3)    Understanding, carrying out, and remembering simple instructions;

    (4)    Use of judgment;

    (5)    Responding appropriately to supervision, co-workers and usual work situations; and

    (6)    Dealing with changes in a routine work setting.

Id. Each of Ms. Coolley's claims will be separately addressed.

BILATERAL FOOT PAIN

The administrative record reflects that Ms. Coolley was seen by podiatrist Dr. Stansberry on September 17, 2009, "for complaints of pain in both feet." (Docket 13 ¶ 9). The diagnosis on that day was "plantar fasciitis and arthritis of the navicular cuneiform joint." Id. ¶ 11. The podiatrist recommended orthotics to "assist in controlling foot geometry and force direction by reducing the need for muscles to compensate for the joint instability." Id. ¶ 12. After

7

wearing the orthotics for approximately three weeks Ms. Coolley reported "some pain when she first got up in the morning and otherwise was really liking her orthotics." Id. ¶ 15.   During that same consultation, Ms. Coolley reported her orthotics were "doing very well and she [was] having minimal problems or pain with her feet."  (AR at p. 415).

Without citing the entirety of the medical records, Ms. Coolley did not seek medical care or express foot pain in the nature of plantar fasciitis or arthritis of the foot joint again.   Ms. Coolley has not carried her burden of proof that "bilateral foot pain" is a separate, severe impairment.   Kirby, supra.

SIDE-EFFECTS OF DIURETIC MEDICATION

In her reply brief, Ms.Coolley withdrew the argument that medication side-effects are an issue to be resolved at step two.   (Docket 18 at p. 7).   Rather, she argues any side-effects should be considered when assessing credibility.   Id.

SEDATING EFFECTS OF VICODIN AND TRAMADOL

Ms. Coolley withdrew her claim on this issue at step two.   Id.

EDEMA OF BOTH LOWER EXTREMITIES

Ms. Coolley's opening brief did not address her claim that edema of both lower extremities should be considered a severe impairment at step two.   See Docket 18 at pp. 17-20.   In her reply brief, plaintiff argues "edema . . . is a severe medically determined impairment as defined at 20 CFR § 404.1513, because it results from 'anatomical or physiological . . . abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.' "

8

(Docket 18 at pp. 9-10) (brackets omitted).   Plaintiff acknowledges the edema should be associated with her "obesity, sleep apnea, and knee surgery."   Id. at p. 10.   She argues her edema affected the manner in which she ambulated.   Id.

The medical record frequently charted Ms. Coolley's various stages of edema and that it appeared to wax and wane depending on the relative severity of her other health conditions, particularly her weight and hypertension.   (Docket 12 ¶¶ 14, 16, 18, 21, 24, 26, 29, 50, 51, 65, 73, 78, 82 & 98).   The common report was that her edema was caused by a combination of her morbid obesity and sleep apnea.   Id. ¶¶ 17, 55 & 65.   Norvasc which treated her hypertension and Lasix which reduced water retention prompted reduction in the severity of her condition.   Id. ¶¶ 29, 58, 63, 69, 78 & 82.   When Norvasc diminished in effectiveness Furosemide was prescribed which reduced the edema in her legs. Id. ¶¶ 62 & 69.   Ms. Coolley was encouraged to lose weight, complete low-impact exercises and elevate her legs when edema caused problems.   Id. ¶¶ 15, 39, 57, 65 & 74.

The record discloses Ms. Coolley's edema was generally controlled through medication, either directly or through control of her hypertension.   "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."   Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (quoting Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)).   Ms. Coolley has not carried her burden of proof that "edema of both lower extremities" is a separate, severe impairment.   Kirby, supra.

The ALJ properly identified and considered Ms. Coolley's edema as a non-severe medical condition and impairment.   The impact, if any, of Ms. Coolley's non-severe impairments on the ALJ's credibility determination of Ms. Coolley and the RFC determination will be discussed later in this order.

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526.   If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.   A claimant has the burden of proving an impairment or combination of impairments meet or equals a listing within Appendix 1.   Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

The ALJ found Ms. Coolley did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" of Appendix 1.   (AR at p. 23).   The ALJ considered Ms. Coolley's bilateral knee impairment but found it did "not meet the criteria of Listing 1.02(A) as there is no evidence of inability to ambulate effectively as defined in 1.00B2b." Id.   The absence of "evidence of inability to ambulate effectively" was the basis for the ALJ's decision to conclude Ms. Coolley's obesity did not qualify as a listed impairment.   Id.

10

Ms. Coolley argues the ALJ erred in concluding she did not have "impaired ambulation" as a "morbidly obese" individual "with bilateral midfoot arthritis, bilateral knee replacements, persistent severe edema in her bilateral lower extremities, and shortness of breath associated with the exertion of carrying 273 to 308 pounds on her five-foot frame."   (Docket 15 at p. 23).   As evidence of her ambulation problem, Ms. Coolley points to her testimony that she used "a cane, walker, and motorized scooter" at her last position of employment.   Id. (referencing Docket 12 ¶ 9).   She also argues that "[i]n December 2013 she had 'wide-based, waddling irregular gait, and abnormal balance' with abnormal motor strength and tone."   Id. (referencing Docket 12 ¶ 98).   Ms. Coolley further asserts the ALJ erred by not considering her right chronic rotator cuff tear under Listing 1.02 as an "inability to perform fine and gross movements effectively on a sustained basis . . . ."   (Docket 15 at p. 25) (underlining omitted).

The Commissioner argues Ms. Coolley failed to sustain her burden in showing the evidence establishes her combined impairments are equal in severity to all of the medical criteria of a specific Listing.   (Docket 17 at pp. 18-21).   The Commissioner asserts Ms. Coolley "did not need to use both hands for a walker or canes."   Id. at p. 18 (referencing Listing 1.00(B)(2)(b)(2)).

Effective ambulation is described in the Social Security Regulations as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They

must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.   The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Appendix 1, Listing 1.00(B)(2)(b)(2).

There is no evidence Ms. Coolley cannot walk without the assistance of a walker or two canes.   Rather, it is her preference from time-to-time to use a walker or one cane.   (AR at pp. 51-52).   Ms. Coolley testified she could sit for a couple of hours and then get up and walk around for 5-10 minutes before sitting for another couple of hours.   (AR at p. 44).   Ms. Coolley stated she was able to move slowly from room to room and was capable of walking up three steps, catching her breath and then continuing up the three remaining steps in her home.   (Docket 12 ¶ 99; AR at p. 53).   The evidence supports the ALJ's conclusion that Ms. Coolley could effectively ambulate.   (AR at p. 23).

Listing 1.00(B)(2)(c) specifically requires a finding of "an extreme loss of function of both upper extremities."   Appendix 1, Listing 1.00(B)(2)(c) (emphasis added).   There is no claim of any impairment of function of Ms. Coolley's left upper extremity.   The record lacks any reference to Ms. Coolley's right shoulder rotator cuff tear having a significant effect on her fine or gross motor skills as

contemplated by Listing 1.00(B)(2)(c).   See Dockets 12 & 13 and AR at pp. 34-60.   Ms. Coolley testified she has no problem making a fist with her right hand, holding onto things without dropping them and is able to twist a door handle to open, although sometimes she uses her left hand to accomplish that task.   (AR at p. 46).   She is able to drive a car and use her home computer to check her bank account and conduct job research.   Id. at p. 49.

The claimant bears the burden of proving she "has a medically severe impairment or combination of impairments."   Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).   The ALJ properly concluded that Ms. Coolley's right upper extremity did not qualify as meeting or medically equaling the severity of one of the listed impairments.   Ms. Coolley has not carried her burden of proof at step three.   Bowen, supra.

## STEP FOUR

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity.   20 CFR § 404.1520(e).   RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from her impairments.   Id. § 404.1545(a)(1).   In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.   Id. § 404.1545(e).   All of the relevant medical and non-medical evidence in the record must be considered.   Id. §§ 404.1520(e) and 404.1545.

13

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox, 495 F.3d at 619 (because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence.").   The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.' "   Guilliams, 393 F.3d at 803 (quoting Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

"In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments."   Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003)).   As stated earlier in this discussion, a severe impairment is one which significantly limits an individual's physical or mental ability to do basic work activities.   20 CFR § 404.1521(a).

Ms. Coolley claims the ALJ erred by determining RFC before hearing Ms. Coolley's testimony, determining credibility and considering the post-hearing medical evidence.   (Docket 15 at p. 15).   Because the ALJ presented a

14

hypothetical question containing a RFC to the vocational expert at the beginning of the hearing and before taking any other testimony, Ms. Coolley argues the ALJ predetermined her RFC and "deprived [her] of a meaningful 'opportunity to be heard . . . .' " Id. at p. 16.

The Commissioner argues the ALJ's decision to ask the vocational expert the hypothetical RFC question does not mean the ALJ improperly predetermined step four out of order.   (Docket 17 at pp. 6-11).   The Commissioner asserts that the written decision of the ALJ properly "summarized Coolley's testimony, application information, and medical information, including the post hearing evidence, in some detail . . . ."   Id. at p. 7.   Further, the Commissioner argues the vocational expert remained available throughout the hearing in the event the testimony in some fashion changed the content of the hypothetical RFC.   Id. at p. 10.

Ms. Coolley's argument is misplaced.   It is the ALJ's obligation to follow the five step evaluation process in arriving at the ultimate decision.   How the evidence, including the use of a hypothetical RFC and the testimony of a vocational expert, comes into the administrative record does not impact the ultimate decision.   Where the hypothetical question posed to the vocational expert does not adequately reflect the claimant's impairments, the testimony of the vocational expert cannot constitute substantial evidence on the record as a whole.   See Ross v. Apfel, 218 F.3d 844, 850 (8th Cir. 2000).   If the assessment of Ms. Coolley's RFC is correct, the question posed to the vocational expert is

then an appropriate area of inquiry and the answer may constitute substantial evidence.   See Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir. 1992) ("[H]ypothetical question[s] posed to [a] vocational expert must precisely set out all claimant's impairments.") (citations and internal quotation marks omitted).

The record does not support Ms. Coolley's argument the ALJ asked the vocational expert the hypothetical question, prevented Ms. Coolley or her representative from questioning the witness and discharged the witness.   To the contrary, the transcript of the hearing disclosed the ALJ went back and forth between questioning Ms. Coolley and the vocational expert.   (AR at pp. 37-41). At no point during the hearing did Ms. Coolley's representative ask for leave to question the vocational expert and the court will not adopt the argument Ms. Coolley's representative was so unfamiliar with the administrative process as to require the ALJ to invite claimant's questioning of the witness.   (Docket 18 at pp. 3-4).

CREDIBILITY

As part of the process of determining RFC the ALJ must consider the credibility of the claimant and the weight to be given to the evidence as a whole. Ms. Coolley claims diuretic medicine causes her to urinate so frequently this side-effect must be considered in evaluating her credibility.   (Docket 18 at p. 7).

During the June 18, 2013, hearing Ms. Coolley testified that when "taking 160 milligrams of Furosemid[e] [she must go] to the bathroom every five minutes . . . . for probably the first 4 hours . . . then it goes to 10 minutes, 15 minutes, to

the point [by 6 hours later she is] going about every half-hour."   (Docket 12 ¶¶ 179 & 181).   In a 2013 post-hearing disability physical, Ms. Coolley "reported that she needed to void very frequently the first three hours after taking Furosemide, sometimes voiding every 15-30 minutes."   Id. ¶ 89.

The ALJ acknowledged Ms. Coolley's testimony on this issue.   (AR at pp. 22-23).   He concluded "[h]owever, there is no evidence that she has reported this side effect to any treating or examining source, and no documentation of problems with excessive urination in the medical record."   Id. at p. 23.   Ms. Coolley does not cite any medical record of a "treating or examining source" which contradicted the ALJ's finding.   Id.   Rather, she argues that because the purpose of diuretic medications is to cause urination, the ALJ must accept Ms. Coolley's testimony as corroborated.   (Docket 18 at p. 7).

Ms. Coolley makes the same credibility claim with regard to the ALJ's failure "to address the sedating effects of Vicodin and Tramadol."   (Docket 15 at p. 19) (referencing Docket 12 ¶¶ 69 & 134).   Ms. Coolley argues Tramadol and Vicodin cause fatigue and drowsiness.   (Docket 18 at p. 8).   Because of this post-hearing declaration, Ms. Coolley argues the ALJ should have "factor[ed] these limitations in to the RFC."   Id.

In October 2010, Dr. Vosler renewed Ms. Coolley's prescription for Tramadol.   (Docket 12 ¶ 24).   Ms. Coolley's earlier prescription was for 60 pills

which lasted approximately 5 months.[1]   Id.   During the October visit, Ms. Coolley did not mention any side effect of Tramadol.   Subsequent consultations likewise failed to mention any significant side effect from Tramadol.   Id. ¶¶ 35, 53 & 62.   In January 2012, Ms. Coolley reported she was taking Tramadol twice daily without relief but made no mention of any adverse side effect.   Id. ¶¶ 67 & 69.

The medical records chart a similar history with Vicodin.   Id. ¶¶ 68-69. Ms. Coolley was taking Vicodin every 6-8 hours for pain in January 2012.   She reported no adverse side effect during any subsequent medical appointments. Id. ¶¶ 72, 76, 81 & 84.   But in a January 31, 2012, disability report Ms. Coolley reported that "Tramadol caused extreme tiredness and Vicodin caused extreme tiredness and sleepiness."   Id. ¶ 134.   During the administrative hearing Ms. Coolley made no mention of either drug or any adverse side effect.   (AR at pp. 34-60).   Just because drowsiness or fatigue may be a potential side effect of a medication does not make the side effect a severe impairment in this case.

Ms. Coolley testified she could lift a jug of water and a 10-pound bag of flour using both hands.   Id. at p. 44.   She indicated she was able to sit for a couple of hours, get up and walk for 5-10 minutes and then sit for another couple hours.   Id. at pp. 44-45.   She testified she was capable of doing this cycle of activity several times a day.   Id. at p. 45.

---

[1]On average this would equate to taking only one pill every two to three days.

Addressing any limitation caused by her shoulder injury, Ms. Coolley testified she was able to extend her right arm to about shoulder level, both in front and to the side.   Id.   She has no problem making a fist with her right hand or holding onto things without dropping them and was able to twist a door handle to open a door, although sometimes she used her left hand to accomplish that task.   Id. at p. 46.   She is able to drive a car and use her home computer to check her bank account and conduct job research.   Id. at p. 49.   After being laid off from her last job when the business closed, Ms. Coolley took several computer classes to increase her job skills.   Id. at p. 55.

Ms. Coolley testified she applied for a position at the new company which was situated in the same building as her previous employer.   Id. at p. 57.   She felt she "would have worked with no problem whatsoever" doing the same type of work she had performed before.   Id.   Against this testimony, Ms. Coolley argues she is disabled and unable to work at any level of exertion.   Id. at p. 59.

The ALJ concluded Ms. Coolley's "statements concerning the intensity, persistence and limiting effect of [her medically determinable symptoms]" was not "entirely credible."   (AR at p. 25).   The ALJ articulated the reasons for that credibility determination.   Id. at pp. 25-26.

Contrary to the plaintiff's argument, the ALJ's findings are supported by the record.   "Where adequately explained and supported, credibility findings are for the ALJ to make."   Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).   Again, the court must "defer to an ALJ's credibility finding as long as the ALJ explicitly

discredits a claimant's testimony and gives a good reason for doing so." <u>Schultz</u>
<u>v. Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and
citations omitted).   While the court notes there is evidence contrary to the
findings of the ALJ, the decision to discount Ms. Coolley's credibility is supported
by the substantial weight of the evidence.   <u>Guilliams</u>, 393 F.3d at 801; <u>Schultz</u>,
479 F.3d at 983.   Ms. Coolley's objection to the ALJ's credibility finding is
overruled.

<u>RESIDUAL FUNCTIONAL CAPACITY</u>

Having made a credibility determination concerning Ms. Coolley's
statements and testimony, the ALJ incorporated Ms. Coolley's testimony
regarding her lifting and carrying limitation and her sitting and walking activity
into the finding that she is capable of performing sedentary work.   (AR at p. 24).
Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a
> time and occasionally lifting or carrying articles like docket
> files, ledgers, and small tools. Although a sedentary job is
> defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job
> duties. Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a).   Sedentary work requires only occasional walking and
standing.   <u>Id.</u>   "Occassional" is defined as "occurring from very little up to
one-third of the time, and would generally total no more than about 2 hours of an
8-hour workday." <u>Titles II & XVI: Determining Capability to Do Other Work—</u>
<u>Implications of a Residual Functional Capacity for Less than a Full Range of</u>

Sedentary Work, SSR 96-9p (S.S.A 1996); see also Titles II & XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2, 1983-1991, SSR 83-10 (S.S.A. 1983).   The amount of sitting required in a sedentary job, "would generally total about 6 hours of an 8-hour workday."   SSR 96-9p.   These were the same limitations articulated by the non-examining physician and adopted by the ALJ.   (AR at p. 28).

The conclusion Ms. Coolley had a RFC to perform past relevant work was a determination at step four of the sequential evaluation process.[2] See 20 CFR § 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.   If you can still do your past relevant work, we will find that you are not disabled.").   If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.   Id. § 404.1520(a)(4).   See also Nimick v. Secretary of Health and Human Services, 887 F.2d 864, 865 (8th Cir. 1989).

---

[2]Posing a hypothetical question to the vocational expert during the administrative hearing is typically part of step five in the sequential evaluation process.   Baker, 159 F.3d at 1144.   The "burden of production shifts to the Commissioner at step five."   Stormo, 377 F.3d at 806.   In this case, however, the opinion of the vocational expert provided additional opinion support for the ALJ's finding at step four.   The vocational expert concluded "this . . . hypothetical would be consistent with past work as a collector as actually performed and described in the record."   (AR at p. 41).

The ALJ's conclusion that Ms. Coolley is not disabled is supported by substantial evidence in the record.   42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869; <u>Howard</u>, 255 F.3d at 580.

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion to reverse (Docket 14) is denied.

IT IS FURTHER ORDERED that defendant's motion to affirm (Docket 16) is granted.

Dated March 24, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
_____
JEFFREY L. VIKEN
CHIEF JUDGE

22